OPINION OF THE COURT
Pasquale Bifulco, J.
The defendant, Thomas Stone, is charged with the violation of Vehicle and Traffic Law § 1192 (2), (3), operating a motor vehicle while in an intoxicated condition and/or while he has .10 of 1% or more of alcohol in his blood. Defendant moves for an order suppressing the breathalyzer and coordination test results on the grounds that he did not voluntarily consent to take the breathalyzer test and that he was denied his right to counsel.
A hearing on the issues was held before me on May 9, 1985 and May 13,1985. At that hearing, Police Officer Jusselli of the 120 Precinct, Staten Island, New York, testified for the People and a video cassette was viewed and introduced in evidence. Thomas Stone testified in his defense.
*1010 FINDINGS OF FACT
On October 24, 1984 at about 10:25 a.m. at Clove Road and Narrows Road, Staten Island, New York, Police Officer Jusselli arrived at the scene of an automobile accident involving two vehicles. Defendant was the driver of one of the vehicles. The police officer observed defendant had slurred speech, bloodshot eyes and an odor of alcohol on his breath. Defendant was thereby arrested and taken to the 120 Police Precinct. While defendant was in the RMP on the way to the 120 Precinct defendant was given his Miranda warnings.
At first, defendant refused to take the coordination test and breathalyzer test. Then he asked the police officer if he refused to take the breathalyzer test would he get a DAT, i.e., desk appearance ticket. The police officer said, “if you take the test you get a DAT, if you refuse no DAT, that’s the bottom line”. The police officer further testified that it is the policy of the police department not to issue DAT’s if a defendant refuses to take the breathalyzer test and that the defendant would be incarcerated until he could be arraigned in court, that it was possible that defendant might be in jail up to five days before he would be brought before a judge for arraignment.
The defendant asked to make a phone call to his family to tell them what happened to him and to have them get him a lawyer. The police officer refused to let him use the phone until after the sobriety test was given. The time was approximately 11:24 a.m., one full hour before the two-hour limit for the giving of this test. The defendant’s testimony requesting the aid of legal counsel was supported by the video cassette recording.
The record is void of any testimony from either the police officer or defendant in which the court could infer that a telephone call by defendant when requested by him would interfere unduly with the taking of the tests. The defendant then took the breathalyzer and coordination tests.
CONCLUSIONS OF LAW
The first issue is whether evidence of defendant’s breathalyzer test may be admitted into evidence in this case if the defendant was threatened with incarceration, i.e., “no DAT”, if he did not consent to taking the breathalyzer test.
The second issue to be decided is whether evidence of defendant’s test results from the breathalyzer test and coordination test may be admitted into evidence in this case if the police denied him his right to counsel.
*1011 I. Impermissible coercion to take breathalyzer
The Supreme Court has held that admission into evidence of defendant’s refusal to submit to a blood-alcohol test does not violate his 5th Amendment privilege against self-incrimination. (South Dakota v Neville, 459 US 553 [1983].) The basis of the court’s decision was that there was no impermissible coercion exerted on the defendant to take the test or refuse the test. Hence, the court reasoned that “a refusal to take a * * * test * * * is not an act coerced by the officer, and thus is not protected by the privilege against self-incrimination” (South Dakota v Neville, supra, at p 564).
The very important distinction between South Dakota v Neville (supra) and the case at bar is the police policy and use of a desk appearance ticket (DAT) for defendants arrested for driving while intoxicated (DWI). The People have stipulated that the police policy for DWI arrest is to give a defendant a DAT if he consents to take the breathalyzer test as required by law under Vehicle and Traffic Law § 1194, and on the other hand, if a defendant refuses to take the breathalyzer he will not be issued a DAT. If such a person refuses to take the breathalyzer test he must then go through the arrest proceeding procedure, including arraignment.
CPL 150.10 (“Appearance ticket”) states: “An appearance ticket is a written notice issued and subscribed by a police officer or other public servant authorized by state law or local law enacted pursuant to the provisions of the municipal home rule law to issue the same, directing a designated person to appear in a designated local criminal court at a designated future time in connection with his alleged commission of a designated offense”.
An appearance ticket (DAT) is a substitute procedure for an arrest without a warrant. It must be returnable in the same local criminal court in which the police officer would have been required to take an arrested defendant. (CPL 150.40, 100.55, 140.20 [1].)
CPL 150.20 (2) states that: “[w]henever a police officer has arrested a person without a warrant for an offense other than a felony * * * such police officer may, instead of bringing such person before a local criminal court and promptly filing * * * [a] misdemeanor complaint therewith, issue to and serve upon such person an appearance ticket” (emphasis added). The issuance of a DAT is at the discretion of the arresting police officer. The defendant has no right to receive a DAT. The use of a DAT contemplates an arrest by a police officer who, after taking the defendant to a station house, determines that, in view of the *1012 defendant’s roots and all the surrounding circumstances of the case, prompt booking, formal charges, court arraignment and bail are unnecessary.
The Legislature in the enactment of Vehicle and Traffic Law § 1194 embodies in it two penalties or adverse consequences of refusal to taking the test: (1) license revocation and (2) disclosure of the refusal in a prosecution for operating a vehicle under the influence of alcohol or drugs. (See, People v Thomas, 46 NY2d 100,108 [1978].) The defendant argues that the policy use of a DAT by the police in DWI cases provides an impermissible third penalty. This court agrees.
This policy and procedure is followed by the police department in all five boroughs in every arrest for a violation of Vehicle and Traffic Law § 1192. The People’s stated justification for this policy is that a refusal to submit to the breathalyzer test requires immediate suspension of such person’s license by a judge pursuant to Vehicle and Traffic Law § 1194 (2). Nowhere can this court find this language in Vehicle and Traffic Law § 1194 (2).
Vehicle and Traffic Law § 1194 (2) states in pertinent part: “If such person having been placed under arrest * * * refuses to submit to such chemical test, unless a court, order has been granted pursuant to section eleven hundred ninety'-four-a of this chapter, the test shall not be given and a written report of such refusal shall be immediately made by the police officer before whom such refusal was made * * * The report shall be presented to the court upon the arraignment of the arrested person. The license or permit to drive and any non-resident operating privilege shall upon the basis of such written report, be temporarily suspended by the court without notice pending the determination of a hearing as provided in subdivision three of this section. Copies of such report shall be forwarded by the court, within forty-eight hours, to the commissioner. The court shall provide such person with a scheduled hearing date, a waiver form, and such other information as may be required by the commissioner.” This court interprets Vehicle and Traffic Law § 1194 (2) as stating that upon arraignment of the defendant his license will be temporarily suspended pending a further hearing. There is no requirement that the defendant be brought immediately before a judge or that the police must hold the defendant in custody until the defendant can be arraigned before a judge to get his license temporarily suspended. A DAT with an adjourn date either that same day or the next day would be sufficient and serve the same purpose. “Compulsion need not of course be *1013 physical; it may as well be accomplished by the State’s attaching to the alternative course of action a penalty, punishment or detriment for the imposition of which no other justification exists and of which the defendant is therefore entitled to be free. If, to avoid that unwarranted threatened consequence, the defendant produces what is self incriminating evidence, that evidence is fairly to be regarded as having been compelled and thus constitutionally inadmissible in a criminal proceeding against him.” (People v Thomas, 46 NY2d 100, 107 [1978]; emphasis added.)
Accordingly, contrary to People v Harrington (111 Misc 2d 648 [1981]), this court finds that the police officer’s advising defendant of the police policy and procedure of custody, arraignment and bail, coupled with defendant’s expressed fear of jail does constitute psychological police coercion sufficient to exclude the breathalyzer test results.
II. Right to counsel
In light of the recognition of the importance of counsel in criminal proceedings affecting significant legal rights, law enforcement officials may not, without justification, prevent access between the defendant and his lawyer, available in person or by immediate telephone communication, if such access does not interfere unduly with the matter at hand. (People v Gursey, 22 NY2d 224 [1968].) The Court of Appeals held that a flat refusal by the police to allow defendant to call his attorney violated his privilege of access to counsel. There the record showed that a request to telephone his lawyer would not have interfered with the administration of the breathalyzer test within two hours of the arrest as required by law. Accordingly, the court suppressed the results of the breathalyzer test (supra; see also, People v Blakes, NYLJ, Feb. 27, 1985, p 1, col 2, p 13, col 6 [Crim Ct, Bronx County]; Matter of Burns v Melton, 59 AD2d 975 [1977]; People v Huelin, 85 Misc 2d 139 [1975]; Matter of Leopold v Tofany, 68 Misc 2d 3 [Sup Ct, NY County 1971]; People v Rinaldi, 107 Misc 2d 916 [1981]).
On the record before me, I find that the defendant was properly advised of his rights with respect to taking or refusing to take the breathalyzer test (Vehicle and Traffic Law § 1194). Nevertheless, I find that defendant’s request to telephone his attorney called into play his 6th Amendment right to counsel. There is no showing that his request to call an attorney only one hour after he was arrested would have prevented the breathalyzer test from being administered within the two hours of his arrest. I, therefore, hold that defendant’s right of access to counsel has been violated.
*1014 Accordingly, defendant’s motion to suppress evidence of his breathalyzer and coordination tests is granted.